### PRYOR et al. v. CITY OF BUFFALO et al.

(Supreme Court, Special Term, Erie County. November, 1908.)

1. INTEREST (§ 37*)—ALLOWANCE AFTER MATURITY.

Where the contract rate of interest is lower than the legal rate, the higher rate is allowed after maturity.

[Ed. Note.—For other cases, see Interest, Cent. Dig. § 77; Dec. Dig. § 37.*]

2. EQUITY (§ 62*)—FOLLOWING THE LAW—ALLOWANCE OF INTEREST.

Generally equity follows rules of law in allowing interest, but will allow it where not recoverable at law.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 183; Dec. Dig. § 62.*]

3. INTEREST (§ 31*)—RATE—BREACH OF CONTRACT.

A vendor deposited the purchase money with a trust company to draw 4 per cent. interest, and the purchasers, on suing to rescind for breach of contract, made the company a party, presumably to tie up the fund. *Held*, that the rate of interest to which the purchasers are entitled from the breach to judgment in their favor is 4, and not 6, per cent., the legal rate, since by tying up the funds they prevented the vendor from earning more than 4 per cent. thereon.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 64–67; Dec. Dig. § 31.*]

Action by Edward B. Pryor and others against the City of Buffalo and another. Judgment rendered.

See, also, 112 N. Y. Supp. 437.

Moot, Sprague, Brownell & Marcy, for plaintiffs.
Louis E. Desbecker and Samuel F. Moran, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MARCUS, J. Upon the original submission of this case, judgment was directed for the plaintiffs. The question of interest on $901,000, from the day of the breach of contract, at the rate of 6 per cent. is now urged by the plaintiffs. The defendants contend that such rate begins only from the day of entry of judgment, and the rate fixed by the terms of the deed at 3 per cent. controls up to such entry. The contract between the parties contained the provision upon which this question arises, as follows:

"It is further mutually agreed and understood that in case the party of the first part shall not give good title and possession to the whole or any part of the premises, and of and to the rights and privileges herein set forth, then within twelve months from the date hereof the party of the second part, upon a reconveyance of said premises as herein provided, shall receive the entire purchase price with 3 per cent. interest from the date hereof."

The city deposited the money received from the plaintiff with the Commonwealth Trust Company. The plaintiffs made the trust company a party to the suit, and thereby precluded or hindered the city from withdrawing the money and employing it to the best advantage. Presumably the object of the plaintiff was to tie up the fund in the hands of the trust company, and to enjoin it from paying it out in case it should threaten to do so; and the trust company, having been made a party to the suit, would naturally refuse to pay it over to the city upon demand without the consent of the plaintiffs, or unless the plaintiffs would discontinue the action as to the trust company. That the trust company was under the legal obligation to pay over the amount of its deposit to its creditor, the city, notwithstanding the pendency of this action, and that it would not be legally justified in refusing to fulfill its obligation, is not necessarily decisive of the question under consideration. The suit constituted a threat or menace of harm or damage to the trust company in case it should pay over the fund. Else why was the trust company made a party to the litigation? The suit was equivalent to a notice to the trust company not to part with the fund until the controversy was determined and it was ascertained to whom the fund should be paid over. Thus the plaintiffs indicated their purpose or intention to maintain, preserve, and keep the "investment" in statu quo until final determination. The plaintiffs not only consented to the retention of the fund by the trust company, but really threatened to take steps to prevent the depository from paying it over to the city, and by its acts it succeeded in its design. The plaintiffs, therefore, precluded the city from earning a greater rate of interest than the trust company agreed to pay for the use of the money. That being the case, equity imperatively demands that the plaintiffs' claim should be limited to the amount of interest actually earned by the city. The plaintiffs knew that the city was receiving no more than bank interest, and, indeed, would not permit it to make any more.

Where the contract is lower than the legal rate, the higher rate after maturity is allowed, because otherwise the debtor would derive a benefit from his own default—would profit by his own wrong. The debtor may make a profit. He may pocket the difference between the two rates. Whether he actually does or not can make no difference

either in law or equity, for the creditor is deprived of the most beneficial use of the money due him; whereas, where the creditor hinders or prevents the debtor from earning the legal rate by requiring that the investment shall be preserved and kept intact until the controversy is determined, the reason of the rule fails, and therefore the rule itself ceases to have any application to the circumstances of the case, in view of a court of equity. How can a plaintiff justly claim as damages interest upon a fund which he demanded or required that his debtor should not employ or invest in a way to earn the interest?

As a general rule, equity follows rules of law governing the allowance of interest. Campbell v. Meiser, 6 Johns. Ch. 24. And yet a court of equity will allow interest in cases where it could not be recoverable at law. Woerz v. Schumacher, 161 N. Y. 537, 538, 56 N. E. 72. General rules are subject to exception, and where the principle or reason upon which a general rule is founded does not exist in the particular case, the rule ought not to be inexorably applied in such case when the party seeks equitable relief. And if it is not right that the defendant should be chargeable with the interest claimed, then both justice and equity require the court to refuse it to the claimant.

Interest will therefore be allowed at the rate of 3 per cent., as fixed by the terms of the deed, up to the day of the breach, and thereafter, up to the day of the entry of judgment, at 4 per cent. per annum, in accordance with agreement made between the trust company and the treasurer of the city of Buffalo.